T.C. Summary Opinion 2014-4

UNITED STATES TAX COURT

YONG J. DONG AND LIJUN WENG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23204-12S.                    Filed January 9, 2014.

<u>Frank Agostino</u>, for petitioners.

<u>Peggy J. Gartenbaum</u> and Michael Sihksnel, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income tax for 2007 and 2008 of $15,802 and $14,932, respectively.

After concessions by the parties,[2] the sole issue remaining for decision is whether petitioners are entitled to home mortgage interest deductions for 2007 and 2008 in excess of the amounts respondent allowed.  We hold that they are not.

## Background

This case was submitted fully stipulated under Rule 122.  We incorporate by reference the parties' stipulation of facts, second stipulation of facts, stipulation of settled issues, and accompanying exhibits.

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] For 2007 and 2008 petitioners concede that they are entitled only to the deductions on their Schedules E, Supplemental Income and Loss, as determined in respondent's notice of deficiency.  Respondent concedes all of the adjustments on Schedules A, Itemized Deductions, other than the home mortgage interest deduction.  The parties agree that the computational adjustments to petitioners' itemized deductions will be made on the basis of the outcome of the issue regarding the home mortgage interest deduction.

Petitioners resided in the State of New York at the time that the petition was filed.

At all relevant times petitioners have owned the property at 50th Avenue, Oakland Gardens, New York (Oakland Gardens property), and have used it as their primary residence.

In June 2005, around the time petitioners acquired the Oakland Gardens property, they entered into a loan agreement with petitioner Yong J. Dong's parents, Xing Ming Dong and Hang Lian Yang, in respect of the Oakland Gardens property. This was commemorated in the "Home Equtty [sic] Loan Agreement" (loan agreement) and "Home Equiity [sic] Deed of Trust" (deed of trust). The loan agreement allows for a loan amount up to $130,000 with an interest rate of 3.5% plus a prime rate not to exceed a 12% annual rate. This was not a purchase money mortgage; rather, it appears to have been a credit line mortgage.

The loan agreement provides that petitioners' interest in the Oakland Gardens property is specific security for the payment of the debt.

The loan agreement and the deed of trust were never recorded in any jurisdiction. The parties agree that New York State law governs the loan agreement and the deed of trust.

In 2007 petitioners made payments pursuant to the loan agreement totaling $26,442. In 2008 petitioners made payments pursuant to the loan agreement totaling $26,162.

Petitioners timely filed their 2007 and 2008 Federal income tax returns. On their 2007 tax return petitioners claimed a home mortgage interest deduction totaling $70,784. On their 2008 tax return petitioners claimed a home mortgage interest deduction totaling $71,431.

In July 2012 respondent issued petitioners a timely notice of deficiency, determining deficiencies of $15,802 for 2007 and $14,932 for 2008. The notice of deficiency disallowed, inter alia, $26,442 of the $70,784 petitioners claimed on their 2007 tax return and $26,162 of the $71,431 petitioners claimed on their 2008 tax return with respect to their home mortgage interest deductions. The portions disallowed were attributable to payments petitioners made to Xing Ming Dong and Hang Lian Yang in connection with the loan agreement in respect of the Oakland Gardens property.

Petitioners filed a timely petition for redetermination with the Court for 2007 and 2008.

## Discussion[3]

Deductions are allowed solely as a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

As a general rule, a taxpayer may claim a deduction for "all interest paid or accrued within the taxable year on indebtedness." Sec. 163(a). Indebtedness means an unconditional and legally enforceable obligation for the payment of money. Autenreith v. Commissioner, 115 F.2d 856, 858 (3d Cir. 1940), aff'g 41 B.T.A. 319 (1940); Linder v. Commissioner, 68 T.C. 792, 796 (1977).[4]

Section 163(h) prohibits an individual taxpayer from claiming a deduction for personal interest paid or accrued during the taxable year. One of the limited exceptions to this general rule permits individuals to deduct qualified residence interest. Sec. 163(h)(2)(D). Qualified residence interest is interest paid or accrued

---

[3] The issue for decision in this case is legal and not factual in nature. Accordingly, the burden of proof does not inform the decisional process.

[4] Where the transaction giving rise to the claimed indebtedness is between family members, the evidence presented to establish such a debt must be closely scrutinized for economic substance. See Woodward v. United States, 208 F.2d 893 (8th Cir. 1953); Wales v. Commissioner, T.C. Memo. 1978-125, aff'd without published opinion, 624 F.2d 195 (9th Cir. 1980). Respondent does not dispute the bona fide nature of the indebtedness, but disputes only petitioners' compliance with sec. 163(h)(3) regarding the secured nature of the indebtedness.

during the taxable year on acquisition indebtedness or home equity indebtedness with respect to any qualified residence of the taxpayer. <u>See</u> sec. 163(h)(3)(A). A qualified residence includes a taxpayer's principal residence. Sec. 163(h)(4)(A)(i)(I).

The parties do not dispute that the Oakland Gardens property was petitioners' principal residence. The dispute is whether petitioners' payments to Xing Ming Dong and Hang Lian Yang constituted qualified residence interest. Petitioners contend that the amounts paid to Xing Ming Dong and Hang Lian Yang in 2007 and 2008 were "qualified residence interest" under section 163(h)(3). Because neither the loan agreement nor the deed of trust was recorded, respondent contends to the contrary.

Qualified residence interest is any interest paid or accrued during the taxable year on acquisition indebtedness or home equity indebtedness that is secured by the qualified residence of the taxpayer. Section 163(h)(3) provides in part:

(B) Acquisition indebtedness.--

(i) In general.--The term "acquisition indebtedness" means any indebtedness which--

(I) is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and

(II) is secured by such residence.

\*     \*     \*     \*     \*     \*     \*

(C) Home equity indebtedness.--

(i) In general.--The term "home equity indebtedness" means any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of such indebtedness does not exceed--

(I) the fair market value of such qualified residence, reduced by

(II) the amount of acquisition indebtedness with respect to such residence.

Because both acquisition indebtedness and home equity indebtedness require the indebtedness to be secured by the property, we look to the security of the loan between petitioners and Xing Ming Dong and Hang Lian Yang to determine whether payments on it are qualified residence interest. Pursuant to sec. 1.163-10T(o)(1), Temporary Income Tax Regs., 52 Fed. Reg. 48417 (Dec. 22, 1987), secured debt means:

a debt that is on the security of any instrument (such as a mortgage, deed of trust, or land contract)--

(i) That makes the interest of the debtor in the qualified residence specific security for the payment of the debt,

(ii) Under which, in the event of default, the residence could be subjected to the satisfaction of the debt with the same priority as a mortgage or deed of trust in the jurisdiction in which the property is situated, and

(iii) That is recorded, where permitted, or is otherwise perfected in accordance with applicable State law.

The parties agree that the loan agreement provides that petitioners' interest in the Oakland Gardens property is specific security for the payment of the debt. See sec. 1.163-10T(o)(1)(i), Temporary Income Tax Regs., supra. Therefore, petitioners have satisfied the first element of a secured debt under the regulations. See id.

However, neither the loan agreement nor the deed of trust was recorded in any jurisdiction. Failure to record the deed of trust may serve to subordinate it to the interests of third parties without actual notice of it, who are protected by the New York recording statute. See N.Y. Real Prop. Law secs. 281, 291 (McKinney 2006 & Supp. 2013); see also Transland Assets, Inc. v. Davis, 813 N.Y.S.2d 675 (App. Div. 2006). N.Y. Real Prop. Law sec. 281 provides:

(1). (a) For the purposes of this section, a "credit line mortgage" shall mean any mortgage or deed of trust * * * which states that it secures indebtedness under a note, credit agreement or other financing agreement that reflects the fact that the parties

reasonably contemplate entering into a series of advances, payments and readvances, and that limits the aggregate amount at any time outstanding to a maximum amount specified in such mortgage or deed of trust.  * * *

* * * * * * *

(2).  Any credit line mortgage may, and when so expressed therein, shall secure not only the original indebtedness but also the indebtedness created by future advances thereunder made within twenty five years from the date of the recording of such credit line mortgage, whether such advances are obligatory or are to be made at the option of the lender or otherwise, to the same extent and with the same priority of lien as if such future advances had been made at the time such credit line mortgage was <u>recorded pursuant to section two hundred ninety-one of this chapter</u>, although there may have been no advances made at the time of the execution and acknowledgement of such credit line mortgage, and although there may be no indebtedness outstanding at the time any advance is made.  * * * [Emphasis added.]

N.Y. Real Prop. Law sec. 290(3) defines a conveyance to include "every

written instrument, by which any estate or interest in real property is * * *

mortgaged * * *".

N.Y. Real Prop. Law sec. 291 provides:

A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by  this chapter, * * * may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon  the request of any party, on tender of the lawful fees therefor, record the same in his said office.  <u>Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to</u>

purchase or acquire by exchange, the same real property or any portion thereof, * * * in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributees or devisees, if such contract is made in good faith and is first duly recorded. * * * [Emphasis added.]

Therefore, under New York State law, an unrecorded mortgage is invalid against third parties who do not have actual notice of it. See id. secs. 281, 291; Washington Mut. Bank, FA v. Peak Health Club, Inc., 853 N.Y.S.2d 112 (App. Div. 2008); see also T & V Constr., Inc. v. Calapai, 935 N.Y.S.2d 68 (App. Div. 2011). In the event of a default the unrecorded mortgage would not be sufficient to subject the residence to the satisfaction of the debt with the same priority as a recorded mortgage because the unrecorded mortgage is valid only against a third person having actual notice of it. See Washington Mut. Bank, 853 N.Y.S.2d 112; see also Transland Assets, Inc., 813 N.Y.S.2d 675. Therefore, petitioners have not satisfied the second element of a secured debt under the regulations. See sec. 1.163-10T(o)(1)(ii), Temporary Income Tax Regs., supra.

Finally, because the deed of trust and the loan agreement were not recorded, we consider whether the deed of trust or the loan agreement was otherwise perfected under New York State law. See sec. 1.163-10T(o)(1)(iii), Temporary

Income Tax Regs., supra. Petitioners have not, however, alleged or shown that they perfected the deed of trust or the loan agreement in any other way. Neither have they established that there is another way to perfect the deed of trust or the loan agreement under New York State law, nor are we aware of any such way. Thus, petitioners have not satisfied the third element of a secured debt under the regulations requiring that a mortgage or deed of trust be recorded or otherwise perfected under applicable State law. See id.

Because petitioners' indebtedness to Xing Ming Dong and Hang Lian Yang was not a secured debt or otherwise perfected pursuant to State law as defined under the regulations, moneys paid to Xing Ming Dong and Hang Lian Yang did not constitute qualified residence interest. Accordingly, we sustain respondent's determination on this issue.

Conclusion

In holding for respondent on the disputed issue, we have considered all of the arguments advanced by petitioners, and, to the extent not expressly addressed, we conclude that those arguments do not support a result contrary to that reached herein.

In order to give effect to the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.